# SUPERIOR COURT
## of the
## STATE OF DELAWARE

Noel Eason Primos
Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)735-2131

September 29, 2017

Rachelle Allen
60 Linkside Drive, Apt. 202
Magnolia DE 19962

Richard D. Abrams, Esquire
Mintzer, Sarowitz, Zeris, Ledva
   & Meyers, LLP
Citizens Bank Center
919 North Market Street, Suite 200
Wilmington DE 19801

RE: *RACHELLE ALLEN v. RENT-A-CENTER*
*C.A. No. K17C-04-005 NEP*

Submitted: September 1, 2017
Decided: September 29, 2017

Dear Ms. Allen and Mr. Abrams:

Before the Court is Defendant Rent-A-Center's (hereinafter "RAC") Motion to Dismiss or in the Alternative, to Stay, seeking to dismiss or stay the complaint of Plaintiff Rachelle Allen (hereinafter "Ms. Allen"), who seeks damages for Rent-A-

1

Center's alleged wrongdoing in providing her with a bedframe infested with bedbugs. The facts recited here are those as alleged by Ms. Allen.[1]

On November 26, 2016, Ms. Allen and RAC entered into a Lease-Purchase Agreement under which Ms. Allen leased a bed frame from RAC with the option to purchase it. The same day, the parties signed an Arbitration Agreement providing that "in the event of any dispute between [Ms. Allen and RAC], either [Ms. Allen] or RAC may elect to have that dispute or claim resolved by binding arbitration."[2]

Shortly after the bed frame was delivered to Ms. Allen, she discovered that it was infested with bed bugs. Although Ms. Allen had the bed frame removed, a pest control specialist advised her to have her whole apartment treated. Ms. Allen was forced to purchase a new bed, treat the apartment and her clothes for bed bugs, rent alternative accommodations, and seek medical treatment for a rash. On April 4, 2017, Ms. Allen filed this action *pro se* seeking relief for her alleged damages.

RAC filed a motion to dismiss, arguing that the Arbitration Agreement signed by the parties constitutes a valid agreement to arbitrate, and thus that this Court is divested of jurisdiction and that dismissal, or a stay pending the outcome of the arbitration, is warranted.

Ms. Allen answers that the use of the phrase "may elect" in the arbitration agreement signifies that the agreement "only provides arbitration as an option to both parties and [arbitration] does not become required by either party until the other

---

[1] On a motion to dismiss, all well-pleaded factual allegations are accepted as true. *Savor, Inc. v. FMR Corp.,* 812 A.2d 894, 896 (Del. 2002).

[2] By its own terms, the Arbitration Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

party requests said arbitration." Ms. Allen alleges that RAC has never formally requested arbitration.

Delaware law instructs that where there is no substantial question whether a valid agreement to arbitrate in this State was made, this Court shall order the parties to proceed with arbitration.[3] The order shall also operate to stay the pending action.[4] The Federal Arbitration Act similarly provides, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."[5]

Here, the Arbitration Agreement reads that either party "may elect" to resolve the dispute by binding arbitration. Generally, "arbitration provisions g[i]ve rise to mandatory arbitration even when the parties use[] permissive language in their contracts such as 'either party may' elect arbitration."[6] This is because a plain reading of such a clause suggests that "the arbitration provision did not have to be invoked, but once raised by one party, it became mandatory with respect to the other party."[7] The application of this rule of interpretation is sensible here, and the Court

---

[3] 10 *Del. C.* § 5703(a).
[4] *Id.*
[5] 9 U.S.C. § 3.
[6] *Medicis Pharm. Corp. v. Anacor Pharm., Inc.*, 2013 WL 4509652, at *5 (Del. Ch. Aug. 12, 2013) (agreeing with the reasoning of such an interpretation).
[7] *In re Winstarr Communications, Inc.*, 335 B.R. 556 (Bankr. D. Del. 2005).

3

finds on a plain reading of the arbitration clause that there was a valid agreement to arbitrate.

Ms. Allen complains that RAC has never formally initiated arbitration. This does not appear relevant to this Court's consideration. It remains that the arbitration provision "gives rise to mandatory arbitration" and demonstrates that the dispute is referable to arbitration upon the application of either party. RAC has applied to this Court to stay the trial and refer the matter to arbitration, and, in any event, RAC has both formally and informally requested binding arbitration, per its August 30, 2017, letter to Ms. Allen, a copy of which was filed with the Court.

WHEREFORE, Defendant's motion to stay the action pending the outcome of the mandatory binding arbitration is **GRANTED**.


        **IT IS SO ORDERED.**

_/s/Noel Eason Primos_____

Judge

NEP/wjs
oc: Prothonotary